## John L. Gardner *vs.* Boston Water Power Company & another.

he plaintiff purchased of the Boston Water Power Company a number of lots of land in Boston, upon a contemplated street then called Avenue Number One, and afterwards named Berkeley Street, which was to cross the Boston and Providence Railroad between the plaintiff's land and Boylston Street, taking an agreement as to the manner of constructing the street. Controversies arose respecting this agreement, which were compromised by the execution of a new contract by the company, agreeing to complete the avenue "from Tremont to Boylston Street, according to its agreement with the Commonwealth of Massachusetts," within a certain time. By agreement with the Commonwealth, the company were to fill up and lay out its lands "conformably to such directions and plans as to materials and height of filling, location and arrangement of streets, and location and construction of sluices, culverts and bridges, as might be prescribed" by the commissioners on the Back Bay. The commissioners shortly afterwards gave instructions that "every street crossing a railroad should be carried over such railroad by a bridge, with a space between abutments of not less than thirty feet, and a height not less than nineteen feet; which distances and dimensions may be increased hereafter, if it be found by the commissioners desirable; and that all the land and flats must be filled with clean gravel or hard earth." They also furnished a plan, by which it appeared that the street was to cross the railroad by a bridge only about thirty feet long. Subsequent to the execution of the new contract by the company and the plaintiff, the commissioners voted that "they would not object to the construction of a bridge over the Boston and Providence Railroad at Berkeley Street, not exceeding three hundred and twenty-seven feet in length." The construction of a bridge of that length was accordingly commenced *Held*, that the plaintiff could not maintain a bill in equity to compel the construction of a bridge of a less length, and the filling up of the rest of the street with clean gravel or hard earth.

BILL IN EQUITY against the Boston Water Power Company and the Boston and Providence Railroad Company, seeking to compel the defendants to finish Berkeley Street in Boston, at the place where it crosses the Boston and Providence Railroad by a bridge, by filling up the same with gravel or earth, so that the bridge should be of the length of only about thirty feet.

At the hearing, before *Chapman*, J., it appeared that the commissioners on the Back Bay, appointed by the governor under the Resolves of 1852, *c.* 79, acting on behalf of the Commonwealth, entered into an indenture with the Boston Water Power Company on the 9th of June 1854, whereby the Commonwealth and the Water Power Company made a partition of the Back Bay by mutual releases, and provided that the lands therein referred to should be filled and laid out in accordance with plans to be furnished by the commissioners and their successors; and the Water Power Company agreed " to fill up, lay out and drain its lands already made, and all other its lands and flats within the limits of the Back Bay, or laid down upon or included within the commissioners' said plans, conformably to such directions and plans as to materials and height of filling, location and arrangement of streets, squares and other public areas, and as to location and construction of sluices, culverts, bridges and other public improvements as might under said resolves, and according to the provisions of this indenture, be prescribed by said commissioners or their successors, and duly made known to said parties ; " and " to complete within such time as said commissioners or their successors should in writing direct and notify, and to the satisfaction of said commissioners, under their direction and according to their plan, all that portion of Avenue Number One on the plan annexed to said indenture, and the sewers, drains, culverts and bridges connecting therewith, extending from the line of the company's land near the Tremont Road to" Boylston Street. In September 1854 the commissioners communicated to the Water Power Company their instructions for filling, laying out and draining the company's lands, and for constructing streets and bridges. These instructions provided, amongst other things, that " every street crossing

a railroad should be carried over such railroad by a bridge . . . . with a space between abutments of not less than thirty feet, and of a height not less than nineteen feet . . . . . which distances and dimensions may be increased hereafter, if it be found by the commissioners desirable ; " and that "all the land and flats of said corporation must be filled with clean gravel or hard earth." They also furnished a plan, by which it appeared that Avenue Number One was to cross the railroad by a bridge only about thirty feet long.

In 1855 the plaintiff purchased of the Water Power Company a number of lots of land situated upon Avenue Number One, near where it unites with Tremont Street, and at some distance south of where it crosses the Boston and Providence Railroad, taking from the company an agreement to fill, grade and construct the street in a particular manner. Controversies arose respecting this agreement, which were compromised by the execution of a new contract by the company, on the 2d of February 1860, which contained the following clause : " The said company agree to complete Avenue Number One, from Tremont to Boylston Street, according to its agreement with the Commonwealth of Massachusetts, within the term of two years from September 1st 1859." In May 1860 the Water Power Company sold to the Boston and Providence Railroad Company several lots of land on Berkeley Street, at the crossing, and the latter company agreed to assume the obligations of the former company relative to the building of the bridge over the railroad, and the grading of the street necessary for that purpose ; and they soon afterwards applied to the commissioners for a variation in the original plan of the bridge. A correspondence on this subject ensued, and on the 20th of May 1862, the commissioners voted that " they would not object to the construction of a bridge over the Boston and Providence Railroad at Berkeley Street . . . . . not exceeding three hundred and twenty-seven feet in length." The construction of a bridge of that length was accordingly commenced. On the 27th of June 1862 the plaintiff gave notice to the defendants of his objection to the proposed method of completing the street.

Upon these facts the case was reserved for the determination of the whole court, with the agreement that, if the question should become material whether the plaintiff would suffer pecuniary damage, and if so to what extent, from the failure to perform the contract in the manner contended for by him, evidence should be taken upon that subject hereafter.

*J. G. Abbott & G. Putnam, Jr.,* for the plaintiff. The true meaning and effect of the clause in the agreement of February 2d 1860 were, to bind the Water Power Company to fill up Berkeley Street as a solid street, and to build a bridge over the railroad thirty feet in length. This was very material to the plaintiff. At the time when this contract was made, the Boston and Providence Railroad Company had not acquired their additional lands at the crossing. By the contract, the street was to be filled up solid, except at the crossing. The crossing at that time could not be wider than the located limits of the railroad. If they could afterwards, by a new agreement, extend the bridge to the length proposed, they might also bridge the whole street. The provision that the commissioners might increase the width of the bridges, if desirable, was obviously introduced for the protection of the public, in case the company should undertake to build bridges which were too low or too narrow.

The commissioners have never undertaken to prescribe any variation in that bridge. They have given no such direction. They simply consent; they do not object; they waive the claim of the Commonwealth. But they do not intend to affect the rights or interests of others. It would be a breach of faith on the part of the Commonwealth arbitrarily to vary a plan of public improvement, at the request of a party interested, when other parties interested had laid out large sums upon the faith of the carrying out of the original plan.

*S. Bartlett & B. R. Curtis,* for the defendants.

BY THE COURT. The Boston Water Power Company, by their agreement under seal of February 2d 1860, covenanted with the plaintiff " to complete Avenue Number One, from Tremont to Boylston Street, according to its agreement with the Commonwealth of Massachusetts, within the term of two

years from September 11, 1859." The substance of the plain‑ tiff's bill is a complaint that the Water Power Company (the other defendant being equally bound by the contract) have not completed Berkeley Street in the manner which that covenant required ; but were, at the time of filing the bill, completing it in a different manner injurious to the plaintiff; and he asks a decree for specific performance. The court are of opinion that the manner of completing the avenue to which the plaintiff objects is not a violation of the covenant. The agreement with the Commonwealth to which it refers provided that the avenue was to be completed conformably to the plans and directions which might be prescribed by the commissioners of the Back Bay. Those plans and directions were furnished to the Water Power Company before their contract with the plaintiff of February 2d 1860. The plaintiff contends that it appeared by the plan that Berkeley Street was to cross the Providence Railroad by a bridge only about thirty feet in length, and was to be, throughout the rest of its length, filled up with clean gravel and hard earth. But the directions accompany‑ ing the plan require that the bridges over the railroad should have a space between the abutments of not less than thirty feet, and that this bridge should be of a height not less than nineteen feet, and further provide that " these distances and dimensions may be increased hereafter if it be found by the commissioners desirable." The bridge has been built of much greater dimen‑ sions with the consent of the commissioners.

The plans and directions are to be construed together ; and they show a specific plan for the bridge then adopted, with the express reservation of the power to alter the plan afterward in the mode in which it has been altered. The plaintiff took his covenant subject to the contingency which has happened. No final and absolute direction of the commissioners was made. The reserved power to alter the one which they had then made has since been exercised. The construction of the bridge with enlarged dimensions by the defendants, with the consent of th commissioners, is equivalent to a new direction by the .atter After they had consented to an alteration in the plan of the

bridge, their original direction as to the mode in which it should be constructed could not be considered as subsisting longer. It was in itself a revocation of it.

The widening of the railroad, although subsequent to the contract between the parties, if made with the consent of the owners of the land over which it passed, and of the Commonwealth, does not concern the plaintiff. If it affected his interests unfavorably, he could have no claim for damages. And if it influenced the opinion of the commissioners that a change in the bridge would be desirable, and induced them to consent to it, it did not affect the extent of their reserved power to direct alterations in the bridge. *Bill dismissed.*